# NO. 12-13-00193-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHN GEE WASHAM,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

John Gee Washam appeals his conviction for the offense of evading arrest or detention with a vehicle. He raises two issues on appeal. We affirm.

## BACKGROUND

On July 14, 2012, Officers Donald Shafer and Adam Parker of the Tyler Police Department patrolled the area around the American Inn in Tyler on their police patrol bicycles. They observed a vehicle later discovered to be operated by Appellant enter the parking lot of the American Inn. The officers saw that Appellant's vehicle did not have a front license plate, and that Appellant was not wearing his seat belt. Appellant looked at the officers, waved, and left the parking lot in his vehicle, heading east. The officers followed Appellant on the roadway, activated their emergency lights, and yelled to Appellant to stop several times. Appellant did not stop. Rather, he accelerated quickly away from them. As Appellant arrived at an intersection, he went around a stopped vehicle that was attempting to execute a right turn and merge into southbound traffic. There was only one merge lane and Appellant engaged in evasive maneuvers, narrowly avoiding a collision with the stopped vehicle. The officers lost sight of Appellant as he sped away.

The officers immediately returned to the American Inn and spoke with a resident who had appeared to be waiting for Appellant. The resident provided the officers with a phone number that the officers determined belonged to Appellant. The officers returned to the station, searched the county records, and found a photo of Appellant. Further investigation led them to Appellant's residence. When they arrived, the officers saw the same vehicle they attempted to detain earlier. Appellant was not at the residence, so Officer Parker left a note stating that "it would be in your best interest to call the Tyler Police Department and turn yourself in for the offense you committed on 7-14-12 . . . Your friends, The Tyler Bike Team." Appellant called the Tyler Police Department, but was unable to reach the officers.

On July 18, 2012, Appellant obtained a ride from his pastor's wife to the station and attempted to speak with the officers. At the same time, the officers were obtaining a warrant for Appellant's arrest. The officers received a call that Appellant was waiting at the station for them. After obtaining the warrant, the officers returned to the station and met with Appellant in an unsecured interview room next to the lobby.[1] Appellant was not under any restraint at the time. More than once during the conversation, the officers told Appellant that he was not under arrest and that he was free to leave. Appellant told the officers that he saw them and knew he should have stopped. He even provided a written statement admitting the essential elements of the crime. The officers never told Appellant they had a warrant for his arrest. Nor did the officers read Appellant his *Miranda* or state statutory warnings prior to or during the interview. After concluding the interview, Appellant was allowed to return to the lobby of the station and was arrested there.

Appellant was indicted for the offense of evading arrest or detention with a motor vehicle. The indictment also alleged that he used his vehicle as a deadly weapon during the commission of the offense. The punishment level was enhanced to that of a first degree felony because Appellant had two prior felony convictions. Appellant pleaded not guilty to the charged offense.

Prior to the jury trial, the trial court held a hearing on Appellant's motion to suppress the oral and written statements he made during the interview. He claimed that he was in custody at the time, that the officers were required to provide him with his *Miranda* and statutory warnings,

---

[1] Officer Shafer recorded the interview with a small camera affixed to his uniform.

that the officers did not do so, and consequently, the statements should be suppressed. The trial court denied the motion.

The jury found Appellant guilty of the offense and also found that he used a deadly weapon during its commission. Appellant elected to have the jury assess his punishment, and he pleaded "true" to both enhancement paragraphs. At the conclusion of the punishment hearing, the jury sentenced Appellant to sixty years of imprisonment. This appeal followed.

MOTION TO SUPPRESS

In his first issue, Appellant contends that the trial court erred in denying his motion to suppress evidence. Specifically, he argues that statements he made while at the police station were made while he was in custody, that his rights under Texas Code of Criminal Procedure Article 38.22 and *Miranda* were violated, and that the statements should be suppressed.[2]

**Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W .3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).

A trial court's determination of whether the defendant was in custody presents a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application of law to fact questions that turn on an evaluation of credibility and demeanor. *See id.* at 526–27; *Amador*, 221 S.W.3d at 673. But when application of law to fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Herrera*, 241 S.W.3d at 527; *Amador*, 221 S.W.3d at 673.

---

[2] *See* ***Miranda v. Arizona***, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 1630, 16 L. Ed. 2d 694 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a) (West Supp. 2013).

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24. When a trial court denies a motion to suppress without entering findings of fact or conclusions of law, we assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Herrera*, 241 S.W.3d at 527. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007). When the parties relitigate the suppression issue during the trial on the merits, we consider all evidence from both the pretrial hearing and the trial in our review of the trial court's ruling. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

**Applicable Law**

To safeguard against violations of the Fifth Amendment to the United States Constitution, the United States Supreme Court requires certain warnings to be given to an individual prior to a custodial interrogation. *See Miranda*, 384 U.S. at 478–79, 86 S. Ct. at 1630; *Herrera*, 241 S.W.3d at 525. Similarly, article 38.22 of the Texas Code of Criminal Procedure prohibits the admission into evidence of a custodial interrogation unless certain requirements are met. TEX. CODE CRIM. PROC. ANN. art. 38.22.

The protections under *Miranda* and article 38.22 are limited to interrogations that are custodial in nature. *Herrera*, 241 S.W.3d at 526. A person is in custody "only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citation omitted); *see also Herrera*, 241 S.W.3d at 525–26. The construction of "custody" is the same for both *Miranda* and article 38.22 purposes. *See Herrera*, 241 S.W.3d at 526. A custodial interrogation consists of "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612; *see Herrera*, 241 S.W.3d at 526.

At trial, the defendant bears the initial burden of proving that a statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526. The court of criminal appeals has identified four general situations that may constitute custody: (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect he is not free to leave; (3) law enforcement officers create a situation that would lead a

4

reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest the suspect, and law enforcement officers do not tell the suspect he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009).

**Discussion**

Here, Appellant argues that the third situation applies—that Officers Shafer and Parker created a situation that would lead a reasonable person in his circumstances to believe that his freedom of movement has been significantly restricted. Consequently, his argument continues, he was in custody when he arrived at the police station. Specifically, Appellant points to the note left by Officer Parker stating that "it would be in your best interest to call the Tyler Police Department and turn yourself in for the offense you committed on 7-14-12 . . . Your friends, The Tyler Bike Team." Appellant argues that a "reasonable person could have concluded from this directive that he would be taken into custody once he turned himself in at the police station."

Even if this note would have created a belief in a reasonable person that he was commanded to travel to the station, a question we do not reach, we conclude that a reasonable person in Appellant's circumstances would believe that he was not in custody after he arrived at the station. There was evidence that Appellant called the station prior to the date of his interview and arrest, and the officers were not at the station. There was no evidence that anyone at the station told him that he needed to come to the station at that time. Appellant did not hear from the officers regarding the note, but he decided to voluntarily travel to the station on July 18, 2012, by obtaining a ride from his pastor's wife. When he arrived, he waited in the lobby for the officers to return.[3] Appellant was not restrained. When the officers arrived, they asked Appellant to accompany them to an unsecure room next to the lobby so they could talk. The officers then told Appellant, more than once, that he was not under arrest and was free to leave. Yet, Appellant stayed and explained the events that resulted in his decision to flee from the officers. After concluding the interview, the officers allowed Appellant to leave the interview room, and when he made his way to the lobby of the station, they arrested him.

Regardless of what a reasonable person might have believed when he first arrived at the station, the intervening circumstances would lead a reasonable person to conclude that he was

---

[3] The fact that the officers obtained an arrest warrant at the time Appellant arrived at the station is immaterial since that fact was not communicated to Appellant either expressly or implicitly. *See Herrera*, 241 S.W.3d at 525-26 (stating that subjective belief or knowledge of officer is not a factor in custody determination unless the belief or knowledge is conveyed to suspect).

not in custody and was free to leave once the interview began.[4] Once the circumstances show that the person is acting upon the invitation, urging, or request of police officers, and not the result of force, coercion, or threat, the act is voluntary and the person is not then in custody. *See Livingston v. State,* 739 S.W.2d 311, 327 (Tex. Crim. App. 1987); *see also Oregon v. Mathiason,* 429 U.S. 492, 493–96, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977) (holding defendant not in custody where (1) he voluntarily came to police station in response to request by police, (2) police informed defendant that he was not under arrest, (3) defendant gave incriminating statement after one-half hour interview during which police falsely stated that his fingerprints were found at the scene, (4) after which defendant was allowed to leave police station). Even a five hour interview was held to be voluntary and noncustodial when the police, who were investigating a capital murder, told the defendant that he did not have to talk and that he was not under arrest, took him to a police station for the interview, and told him several times that he was free to leave. *See Estrada v. State,* 313 S.W.3d 274, 294–95 (Tex. Crim. App. 2010). Therefore, based upon the facts of this case, Appellant's first issue is overruled.

## ERROR IN THE JUDGMENT

Appellant contends in his second issue that the judgment should be modified to reflect that his true name is "John Gee Washom." The State did not address this issue in the argument portion of its brief. However, in its prayer for relief, the State joined Appellant in his request to reflect that his true name is "John Gee Washom."

During a pretrial hearing, the following discussion took place:

THE COURT: All right, sir. The State's indictment has your last name spelled two different "Washom" ways. Your first name is John.

THE DEFENDANT: Yes, sir.

THE COURT: And it is spelled J-O-H-N?

THE DEFENDANT: Yes, sir.

THE COURT: And your last name is spelled two different Washom ways. One is W-A-S-H-A-M and the other one is W-A-S-H-O-M. Is one of those spellings correct?

THE DEFENDANT: Yes, sir.

---

[4] We note that the reasonable person standard presupposes an innocent person. *See State v. Ortiz,* 382 S.W.3d 367, 372–73 (Tex. Crim. App. 2012).

6

THE COURT: Which one is correct?

THE DEFENDANT: The last one.

THE COURT: With an O-M?

THE DEFENDANT: Yes, sir.

THE COURT: That was how you were born?

THE DEFENDANT: That's how I was born.

THE COURT: With an O, not as an A?

THE DEFENDANT: Not as an A.

THE COURT: So your correct true name, under the law, is John Washom, W-A-S-H-O-M?

THE DEFENDANT: O-M.

THE COURT: All right. Court will true name the defendant to that name in the indictment and mark the indictment. The true naming revisions of our Code of Criminal Procedure reflect that that is his true name. And I'll strike through the first part, which is John Washam aka John Washom with an O, since it seems to be the second is correct, and mark it as true named on this date. I'll change that spelling in the Court's charge to reflect the true named information. I guess the only other issue would be, since there's these priors, are they under W-A-S-H-O-M or are they under W-A-S-H-A-M, which might change me back to leaving the aka involved, if that's a future issue involved in the case.

[THE PROSECUTOR]: I'm just trying to see – the 499171, which will be the one in the second paragraph has it shown being W-A-S-H-A-M, so . . .

THE COURT: All right. Well, I've true named the indictment, which is appropriate under our Code of Criminal Procedure. Since it was originally indicted the other way, I'll change the charge to put aka at the end, since seems like that would be appropriate at this point. I just thought if it was a single name, there wouldn't be an issue we have to address in the charge itself.

The trial court's judgment, along with other documents in the record, identifies Appellant as "John Washam," even though Appellant claims his name is "John Washom." The indictment and the charge, along with many other documents in the clerk's record, identify Appellant as "John Washam aka John Washom." Moreover, the trial court did not make any changes to the indictment or charge despite its statements in the above excerpt from the hearing.

This court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information before us to do so. *See* Tex. R. App. P. 43.2(b); ***Bigley v. State***, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). However, given the inconsistencies in the record, we lack sufficient information to modify the judgment to change

Appellant's name. This is because the record is unclear as to Appellant's true name. The written judgment controls over the trial court's statements at the trial to the contrary, because the correct spelling of Appellant's name does not relate to the pronouncement of sentence. *See Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005) (stating requirement that "oral pronouncement match the written judgment applies only to sentencing issues, such as the term of confinement assessed"). Also, the spelling of Appellant's name, if incorrect, is a defect of form, and does not invalidate the indictment or the judgment. *See Butler v. State*, No. 05-07-01206-CR, 2008 WL 4743269, at *3-4 (Tex. App.—Dallas Oct. 30, 2008, no pet.) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. ANN. arts. 21.19, 26.08 (West 2009); *Jones v. State*, 504 S.W.2d 442, 443 (Tex. Crim. App. 1974)); *see also Fernandez v. State*, 353 S.W.2d 434, 436 (Tex. Crim. App. 1962) (holding that failure to change name in indictment to that suggested by defendant was not improper where defendant went under two names, one of which was used in indictment); *Adwon v. State*, 708 S.W.2d 564, 568 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (same).

Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered July 23, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 23, 2014**

**NO. 12-13-00193-CR**

**JOHN GEE WASHAM,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1332-12)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*